UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

CHANTEE JOHNSON,

                Plaintiff,

        v.

VERNON ALLICK, MICHAEL E. HERSKOWITZ,
KINGS DEVELOPMENT GROUP, and JOSEPH A.
LEDWIDGE,

                Defendants.

---------------------------------------------------------------

NOT FOR PUBLICATION

**MEMORANDUM & ORDER**
18-CV-7171 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Chantee Johnson, proceeding *pro se*, filed the above-captioned action on December 17, 2018, against Defendants Vernon Allick, Michael E. Herskowitz, Kings Development Group ("Kings Development"), and Joseph A. Ledwidge. (Compl., Docket Entry No. 1.) On January 11, 2019, Plaintiff filed an application for a temporary restraining order ("TRO") against "third parties of Defendant [Allick]." (Mot. for TRO, Docket Entry No. 5.) For the reasons set forth below, the Court dismisses the Complaint, denies Plaintiff's application for a TRO, and grants Plaintiff an opportunity to file an amended complaint within thirty (30) days of the date of this Memorandum and Order.

**I. Background**

The Court assumes the truth of the factual allegations in the Complaint for the purpose of this Memorandum and Order. The Court understands Plaintiff to be seeking relief related to her employment with Allick. Plaintiff alleges that on February 19, 2013, while she was working as a maid for Allick, a retired corrections officer, Allick disposed of a "large amount of cash to avoid

any tax related matters." (Compl. 6.)[1] Plaintiff alleges that Allick gave her as "a gift from God" and allowed her "to purchase a house of [her] choice," with no obligation to repay him. (*Id.*) After the purchase of the home, Allick began talking to Plaintiff "in a tense way" and treating her "in a very hostile way[,] like [she] was a slave." (*Id.* at 7.)

In March of 2013, Allick took Plaintiff and her sons to Disneyland in Anaheim, California (the "March 2013 Trip"). (*Id.*) During the March 2013 Trip, Plaintiff "refuse[d] to engage in any sexual activities" with Allick, and as a result, Allick told her "he would no longer need [her] services." (*Id.*) In addition to the March 2013 Trip, Plaintiff alleges that Allick constantly called her and "threaten[ed] [her] for the deed [to her] house." (*Id.*) She claims that his "constant threats and sexual har[]assment" have caused her stress, which led to "anxiety attacks" and "mental torture." (*Id.*) Plaintiff alleges that in August of 2013, Allick commenced legal action against her "because [she] changed [her] phone number and did not give him [the] deed [to her home]." (*Id.*)

Shortly thereafter, Plaintiff hired Herskowitz to represent her in the unidentified lawsuit that Allick allegedly commenced against her. (*Id.* at 9.) Plaintiff alleges that Herskowitz told her that she had a "very strong case" against Allick and that she "should commence legal action" against him. (*Id.*) "After . . . eight months [Herskowitz] told [Plaintiff that she] ha[d] to sign a few papers to favorably dispose of the case." (*Id.*) "Due to [Plaintiff's] mental torture, stress, and anxiety," she was not aware of what she was signing. (*Id.*)

Plaintiff alleges that Herskowitz was subsequently charged with criminal acts, including

---

[1] Because the pages of the Complaint are not consecutively paginated, the Court refers to the numbers assigned by the Electronic Case Filing ("ECF") System.

2

embezzlement, real estate fraud, and related charges.[2] (*Id.*) Plaintiff attempted to appeal an unidentified decision to an unidentified court, but "was told [she] did not have proper legal representation and would be unable to file." (*Id.*)

Plaintiff also alleges that in April of 2014, Herskowitz and Ledwidge entered into "a contract without a contract." (*Id.* at 10.) Plaintiff alleges that at an unspecified time, Allick and Herskowitz "engaged in [a] fraud [and] scheme," and that they were "dishonest [and] recklessly present[ed] misleading and false evidence to the courts." (*Id.*) Plaintiff continues to feel threatened by "phone calls and people coming to her [home]." (*Id.*)

Plaintiff states that her civil rights have been violated, that she has experienced mental stress and anxiety, that she has lost income and education, and is in "jeopardy of becoming homeless." (*Id.* at 11.) Plaintiff seeks $2.5 million in damages and seeks the Court's help in protecting her rights. (*Id.* at 10–11.)

---

[2] Plaintiff states that Herskowitz was charged in federal court. The Court has found no record of these criminal charges in federal court, but takes judicial notice of a March 1, 2017 press release from the Queens County District Attorney's Office naming Herskowitz and nine other defendants in a "deed fraud scheme." *See* Eleven Individuals and Two Corporations Indicted in Deed Fraud Scheme, http://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=7&ved=2ahUKEwjQsO DO6rbgAhWH4FQKHUA4Ao4QFjAGegQIAxAC&url=http%3A%2F%2Fwww.queensda.org %2Fnewpressreleases%2F2017%2FMARCH%25202017%2Fking%2520development_03_01_2 017_ind.pdf&usg=AOvVaw0lWoH7-U9KtQqhQmcAkcFS (last visited Feb. 12, 2019). No further information about this criminal proceeding is publicly available. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("We have previously held that it is proper to take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents . . . .") (citing *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

## II. Discussion

### a. Standard of review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

### b. Plaintiff's application for a temporary restraining order

On January 11, 2019, Plaintiff filed a letter requesting a temporary restraining order against "third parties of Defendant [Allick]." (Mot. for TRO.) In her application to the Court, Plaintiff states that the third party[3] continuously "call[s], texts[s], leaves [voicemail] messages,

---

[3] In Plaintiff's application for a TRO, she requests a temporary restraining order against "third parties" of Allick, but only asserts that one "third party" is harassing her. (Mot. for TRO 1.)

4

and sends letters" to her home. (*Id* at 1.) Plaintiff alleges that the third party "calls [her] after business hours from an unknown number" and that the third party "ha[s] violated [her] civil rights by calling [her] on [her] day of worship." (*Id*. at 2.) In addition, Plaintiff alleges that the third party visited her home and "bang[ed] on the front and side door," when her sons were home alone. (*Id*. at 2–3.)

A temporary restraining order, like a preliminary injunction, is an extraordinary remedy that will not be granted lightly. *See Borey v. National Union Fire Ins. Co.*, 934 F.2d 30, 33 (2d Cir. 1991). To obtain a temporary restraining order, Plaintiff must show "a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in [plaintiff's] favor, and that an injunction is in the public interest." *See Am. Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015) (citing *Winter v. NRDC*, 555 U.S. 7, 20 (2008)). A plaintiff may also obtain a temporary restraining order by showing, in the alternative, "irreparable harm and either a likelihood of success on the merits or 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward [Plaintiffs].'" *Clapper*, 785 F.3d at 825 (quoting *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012)).

Court orders granting injunctive relief only bind "(A) parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." Fed. R. Civ. P. 65(d)(2). Thus, when a party requests injunctive relief that can only be provided against a third party who does not fall within the parameters of Rule 65(d)(2), the party's injury cannot be redressed by a favorable court decision. *See Sumpter v. Skiff*, 260 F. App'x 350, 351 (2d Cir. 2008) (holding that the district court did not err in denying the petitioner's motion for injunctive relief sought against a nonparty where the nonparty was not named as a defendant in the petitioner's

5

complaint, and where the nonparty did not fall into any of the exceptions listed in Rule 65(d) (citing *United States v. Regan*, 858 F.2d 115, 120 (2d Cir. 1988))); *see also Regan*, 858 F.2d at 120 ("[A] court generally may not issue an order against a nonparty.").

In Plaintiff's application to the Court, Plaintiff does not identify the third party nor does she indicate the relationship between the third party and Allick. Accordingly, the Court denies Plaintiff's application for a temporary restraining order without prejudice to renew.

### c. Title VII sexual harassment claim

The Court liberally construes Plaintiff's Complaint as asserting sexual harassment claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII") against Allick.

Under Title VII, sexual harassment claims can be pursued under two legal theories: (1) *quid pro quo* sexual harassment, where an individual's tangible job benefits are directly premised on submission to unwelcome sexual conduct, and (2) hostile work environment, where an individual is subject to severe and pervasive discriminatory conduct altering her conditions of employment. *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) ("Although the terms 'quid pro quo' and 'hostile work environment' do not appear in the text of Title VII, they are useful to distinguish between 'cases involving a threat which is carried out and offensive conduct in general.'" (quoting *Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 57 (2d Cir. 2004))); *see also Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 181–82 (E.D.N.Y. 2012) (noting that there is no reason to distinguish between *quid pro quo* and hostile work environment harassment under Title VII) (citing *Gregory v. Daly*, 243 F.3d 687, 698 (2d Cir. 2001)); *Richards v. N.Y.C. Dep't of Homeless Servs.*, No. 05-CV-5986, 2009 WL 700695, at *5 (E.D.N.Y. Mar. 15, 2009) (examining a plaintiff's claims of sexual discrimination under hostile work environment and *quid pro quo* theories of sexual harassment); *Gonzalez v. Beth Israel Med.*

*Ctr.*, 262 F. Supp. 2d 342, 349–50 (S.D.N.Y. 2003) (stating that since the enactment of Title VII in 1964, sex discrimination theories of *quid pro quo* and hostile work environment have become well-established).

"Before bringing a Title VII suit in federal court, an individual must first present 'the claims forming the basis of such a suit . . . in a complaint to the [Equal Employment Opportunity Commission] EEOC or the equivalent state agency.'" *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) (quoting *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006)); *see Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) ("As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." (citation omitted)); *see also* 42 U.S.C. § 2000e-5(e) (providing procedures and deadlines for filing charges with the EEOC, following receipt of a right-to-sue letter, in court); *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015) ("Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII . . . statutory scheme . . . accordingly, it is a precondition to bringing such claims in federal court." (citation and internal quotation marks omitted)). "The complainant must file the complaint with the relevant agency 'within 300 days of the alleged discriminatory conduct and, before bringing suit, must receive a "Notice of Right to Sue" letter from the EEOC.'" *Littlejohn*, 795 F.3d at 322; *see Rivas v. New York State Lottery*, 745 F. App'x 192, 193 (2d Cir. 2018) ("Title VII requires individuals aggrieved by acts of discrimination to file a charge with the . . . EEOC within 300 days 'after the alleged unlawful employment practice occurred.'" (quoting 42 U.S.C. § 2000e-5(e))); *see also Cetina v. Longworth*, 583 F. App'x 1, 2 (2d Cir. 2014) ("A Title VII employment discrimination claim must be filed with the Equal Employment Opportunity Commission ("EEOC") or New York State Division of Human Rights ("SDHR") within 300 days of the alleged unlawful practice.").

"Claims falling outside this statute of limitations are time-barred unless they are subject to waiver, estoppel, or equitable tolling . . . or fall within the continuing violation exception to the 300-day rule." *Rivas*, 745 F. App'x at 193 (first citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); and then citing *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004)); *Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686 (2d Cir. 2001) (stating that after filing a charge with the EEOC, a claimant may then only bring suit in federal court "if she . . . [has] obtained a right-to-sue letter." (citing 42 U.S.C. § 2000e-5(f))). A plaintiff bringing Title VII claims must file a complaint in federal court not more than ninety days after receipt of a right-to-sue letter from the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1); *see also Dawes v. City Univ. of New York*, 193 F. App'x 59, 60 (2d Cir. 2006) ("A Title VII claimant must file his complaint not more than [ninety] days after receipt of a right-to-sue letter from the EEOC." (citing *Cornwell v. Robinson*, 23 F.3d 694, 706 (2d Cir. 1994))).

In filing a Title VII claim, the number of employees a defendant has is a substantive element of a plaintiff's claim. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 504 (2006) ("[T]he employee-numerosity requirement relates to the substantive adequacy of [plaintiff's claim]."). Title VII applies to employers who have fifteen or more employees. *See* 42 U.S.C. § 2000e(b) ("The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ."); *see also Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 195 (2d Cir. 2005) ("An employer is not covered by the provisions of Title VII, unless the employer has at least fifteen employees."). In addition, individuals are not subject to liability under Title VII. *See Cayemittes v. City of New York Dep't of Hous. Pres. & Dev.*, 641 F. App'x 60, 61–62 (2d Cir. 2016) ("Title VII does not provide for individual liability." (first citing *Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014); and then citing *Spiegel v. Schulmann*, 604

8

F.3d 72, 79 (2d Cir. 2010) (per curiam))); *see also Sassaman v. Gamache*, 566 F.3d 307, 315–16 (2d Cir. 2009) (stating that "individuals are not subject to liability under Title VII") (quoting *Patterson v. Cty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004)).

Plaintiff's allegations of sexual harassment are insufficient to state a Title VII claim. Plaintiff cannot bring claims against Allick in his individual capacity under Title VII because individuals are not subject to liability under Title VII.[4] Furthermore, Plaintiff has not alleged any facts that suggest that Allick employed fifteen or more employees at any given time. *See Kuhnmuench v. Phenix Pierre, LLC*, No. 16-CV-9162, 2018 WL 1357383, at *3 (S.D.N.Y. Mar. 15, 2018) (dismissing the plaintiff's amended complaint for failure to state a claim because it failed to plead that the defendant employed fifteen individuals). Nor has Plaintiff alleged that she filed a charge with the EEOC or any other state agency, or received a right-to-sue letter for any such charge.

In addition, based on the Complaint, it appears that the employment relationship between Plaintiff and Allick ended in 2013. (Compl. 7.) Therefore, even if Allick is a covered "employer" under Title VII, any EEOC claim would likely be time-barred as Plaintiff alleges that her employment relationship with Allick ended in 2013 and she has not alleged that her claims are subject to waiver, estoppel, equitable tolling, or fall within the continuing violation exception. *See Daniels v. Juniper Elbow Co.*, No. 14-CV-4898, 2015 WL 1514446, at *2

---

[4] An individual who engages in discriminatory acts may be held liable under the New York State Human Rights Law and New York City Human Rights Law. *See Kercado-Clymer v. City of Amsterdam*, 370 F. App'x 238, 242 n.1 (2d Cir. 2010) (stating that an individual may be sued for discrimination under NYSHRL and NYCHRL where the individual participates in conduct giving rise to the discrimination claim) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995)); *see also Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) (same).

9

(E.D.N.Y. Apr. 2, 2015) (dismissing the plaintiff's complaint because his last date of reported unlawful discrimination occurred in September of 2011 and he filed a complaint in September of 2013 and failed to suggest any reason for the delay in filing his discrimination charge). The Court therefore dismisses Plaintiff's Title VII sexual harassment claims against Allick.

### d. Plaintiff's additional claims against Defendants Herskowitz and Allick

Plaintiff appears to allege that Herskowitz and Allick[5] engaged in illegal activities.

"As a general matter . . . crimes are prosecuted by the government, not by private parties." *Hill v. Didio*, 191 F. App'x 13, 15 (2d Cir. 2006) (citing *Connecticut Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86–87 (2d Cir. 1972)). "A private individual may bring suit under a federal [criminal] statute only when Congress specifically intended to create a private right of action." *See Hill*, 191 F. App'x at 14–15 (first citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002); and then citing *Alaji Salahuddin v. Alaji*, 232 F.3d 305, 308, 311–12 (2d Cir. 2000)); *Cort v. Ash*, 422 U.S. 66, 79 (1975) (holding that no private right of action exists under criminal statutes unless there is a clear statutory basis for such an inference); *see also Leeke v. Timmerman*, 454 U.S. 83, 85 (1981) (holding that a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another).

---

[5] Although Plaintiff lists Ledwidge and Kings Development as named Defendants in this action, there are no allegations specific to Kings Development in her Complaint and Plaintiff only alleges that Ledwidge entered into an unidentified contract with Herskowitz. Thus, Plaintiff fails to allege facts sufficient to state a claim against Ledwidge and Kings Development and the Court therefore dismisses the Complaint against them. *See Askew v. Lindsey*, No. 15-CV-7496, 2016 WL 4992641, at *7 (S.D.N.Y. Sept. 16, 2016) ("[W]here the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that Defendant should be granted." (citing *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999)); *see also Bleiwas v. City of New York*, No. 15-CV-10046, 2017 WL 3524679, at *8 (S.D.N.Y. Aug. 15, 2017) (same); *McCoy v. Goord*, 255 F. Supp. 2d 233, 258 (S.D.N.Y. 2003) (same).

Plaintiff alleges generally that Herskowitz and Allick engaged in "fraud, [a] scheme, [and were] dishonest, [and] recklessly present[ed] misleading and false evidence to the courts." (Compl. 10.) In addition, Plaintiff alleges that Herskowitz "engaged in illegal activities [and that] criminal charges are pending against him in federal court for embezzlement," and that he "defraud[ed] eleven people out of their home." (*Id*. at 9.) Plaintiff has failed to plead any nonconclusory allegations with respect to the conduct of Herskowitz and Allick. Further, even if Defendants are subject to criminal proceedings in federal court, violations of the federal criminal code may not serve as the basis for a civil cause of action unless the criminal statute includes an express or implied private right of action. Thus, the Court has no authority to address these claims.

## III. Conclusion

Accordingly, the Court dismisses the Complaint for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The Court grants Plaintiff thirty (30) days from the date of this Memorandum and Order to file an amended complaint as to her sexual harassment claims. If Plaintiff fails to timely file an amended complaint, the Court will enter judgment dismissing this action for the reasons set forth above.

Dated: February 12, 2019
      Brooklyn, New York

                              SO ORDERED:

                              _____s/ MKB_____
                              MARGO K. BRODIE
                              United States District Judge